(137 P.3d 1081)
No. 94,558

LISA A. CHAMBERLAIN, and VITO J. CARABETTA, M.D., *Appellants*,
v. THE FARM BUREAU MUTUAL INSURANCE CO., INC., *Appellee*.

164

166

*Benjamin M. Kieler* and *Spencer C. Shields*, of Hayes & Kieler, L.L.C., of Overland Park, and *Lynn R. Johnson*, *John M. Parisi*, and *Aaron Kroll*, of Shamberg, Johnson & Bergman, Chtd., of Overland Park, for appellant Chamberlain.

*John M. Klamann* and *Dirk Hubbard*, of Klamann & Hubbard, P.A., of Overland Park, and *Ryan Hodge*, of Ray Hodge & Associates, of Wichita, for appellant Carabetta.

*Arthur S. Chalmers*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellee.

Before MCANANY, P.J., MARQUARDT and CAPLINGER, JJ.

MCANANY, J.: Lisa A. Chamberlain and Vito J. Carabetta, M.D., appeal the district court's dismissal of their individual and class action claims for personal injury protection benefits against The Farm Bureau Mutual Insurance Co., Inc. (Farm Bureau). We affirm.

*Accident*

On August 13, 1996, Chamberlain, a Farm Bureau insured, suffered personal injuries in an automobile accident in which her vehicle was struck from behind by a vehicle driven by Grover Snow. Snow had auto liability insurance with Shelter Insurance Company.

*PIP Claims*

Chamberlain's auto insurance policy provided Personal Injury Protection (PIP) benefits as required by the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq*. As a result of her injuries suffered in the accident, she incurred medical expenses and lost wages. She received medical treatment from Dr. Gail Walter, Dr. Brian Kindred, and Dr. Vito J. Carabetta. She also received therapy at Professional Rehabilitation Services, Inc. (PRS), and chiropractic treatment from Larry Fulk, D.C. Farm Bureau received Chamberlain's PIP claims and proof of medical services from all of these providers. It referred all of Chamberlain's medical bills to CorVel, 1 of 11 companies used by Farm Bureau

to review medical bills and to give advice on whether and how much of the bills should be paid.

Farm Bureau never reviewed or paid for Dr. Walter's charges. With respect to Dr. Kindred, Farm Bureau took more than 60 days after receipt of his bills to process them. It eventually paid a part of Dr. Kindred's bill, but claimed the balance exceeded the usual and customary charges for such services and instructed his office to bill Chamberlain directly for the balance.

Chamberlain assigned to Dr. Carabetta her rights to any insurance payments for medical services. More than 60 days after receipt of Carabetta's bill, Farm Bureau made a partial payment to Carabetta, claiming the balance exceeded the usual and customary charges. It instructed Carabetta to bill Chamberlain for the balance.

It took Farm Bureau more than 90 days after receipt to process PRS's bill. Farm Bureau eventually paid part of the bill and claimed the balance was excessive. Again the provider was advised to bill Chamberlain for the balance.

Within 30 days after receipt of Dr. Fulk's bill, Farm Bureau made a direct partial payment to him, followed by additional partial payments much later after Gerald Elliott, D.C., performed an independent chiropractic examination of Chamberlain at Farm Bureau's request. After examining Chamberlain, Elliott concluded that CorVel was too conservative in its review of Fulk's charges.

PRS and Drs. Kindred, Carabetta, and Fulk were unsuccessful in their attempts to collect the unpaid balances from Chamberlain. PRS referred Chamberlain's unpaid account to a debt collection agency which notified various national credit reporting bureaus of her unpaid account.

*Litigation History*

On September 4, 1997, Chamberlain sued Farm Bureau, claiming Farm Bureau breached its contract of insurance and violated KAIRA by denying PIP benefits, discounting physicians' charges on PIP claims, and denying or discounting her lost wage claim. She also claimed her credit had been adversely affected by Farm Bu-

reau's actions. Chamberlain sought a judgment for unpaid PIP claims, for unpaid wages, interest, attorney fees, and expenses.

The following month, on October 7, 1997, Chamberlain brought a tort action against Snow, the other driver.

On February 26, 1999, Chamberlain amended her petition against Farm Bureau to include not only her individual claims but also claims she was asserting on behalf of a class of Farm Bureau insureds regarding its practice of denying and discounting PIP claims. On behalf of the class she requested declaratory and injunctive relief as well as damages for breach of contract. With respect to her individual claim, she asserted that she had incurred medical expenses of $5,265.90 and lost wages of $2,016.02. Of these, Farm Bureau had paid $3,227.07 for her medical bills and $810.15 for her lost wages.

In April 1999, Chamberlain and Snow agreed to a settlement of her tort claim for $15,000, in exchange for which Chamberlain released Snow and his insurance carrier from further liability. The settlement included recovery for her medical expenses of $5,265.90 and her lost wages of $2,016.02. By the time of the settlement, Farm Bureau had paid PIP benefits of at least $3,227.07 for medical expenses and $810.15 for lost wages. Thus, Chamberlain had outstanding unpaid medical expenses of about $2,038.83, and $1,205.87 of her lost wage claim had not been paid by Farm Bureau. Since Farm Bureau was not included as a payee on the settlement draft, it is unclear whether Chamberlain reimbursed Farm Bureau for its PIP payments. Further, the record does not disclose the amount of attorney fees Chamberlain paid her attorney in settling her tort claim against Snow. Assuming, however, that Farm Bureau was reimbursed, and that Chamberlain's attorney received a ⅓ contingent fee, there remained sufficient funds from the settlement to satisfy Chamberlain's outstanding medical bills and to reimburse herself for the balance of her lost wage claim.

On May 14, 1999, having learned of the settlement with Snow, Farm Bureau moved for summary judgment. It argued that there was no justiciable controversy because Chamberlain's settlement with Snow rendered the issues moot, and after satisfying Farm

Bureau's PIP lien from the settlement proceeds, the balance constituted a credit against the remaining unpaid PIP claims.

On June 3, 1999, Chamberlain and Snow consummated their April settlement agreement, and Chamberlain executed a full release of her claims against Snow and Shelter, his insurer. She then dismissed with prejudice all her claims against Snow.

On August 26, 1999, Carabetta moved to intervene in order to assert a class action claim for delayed or discounted payments from Farm Bureau to health care providers. Aside from declaratory and injunctive relief, Carabetta also sought to individually claim damages for Chamberlain's unpaid bill in the amount of $47.79 plus interest and attorney fees.

On September 23, 1999, the district court overruled Farm Bureau's summary judgment motion. The court found that the setoff provision in K.S.A. 40-3113a did not apply when settlement with the tortfeasor occurred before the payment of all PIP benefits. The court reasoned that if it adopted Farm Bureau's analysis of K.S.A. 40-3113a, the penalty provision of KAIRA for late or unpaid PIP benefits would be meaningless.

Shortly thereafter, on September 29, 1999, the district court granted Carabetta's motion to intervene.

On October 7, 1999, Carabetta filed his class action petition seeking damages and declaratory and injunctive relief for himself and for a class of other similarly situated health care providers for Farm Bureau's practice of discounting and delaying PIP payments in violation of KAIRA. He also claimed that he and the class members were third-party beneficiaries under Farm Bureau's insurance contracts with its insureds, that Farm Bureau breached these contracts, and that Carabetta and the class members were damaged thereby.

*Class Certification*

On July 10, 2000, Chamberlain and Carabetta filed a motion seeking class certification.

On February 15, 2001, the district court granted the class certification motions and certified Chamberlain as representative of a class of Farm Bureau insureds and Carabetta as representative of

a class of health care providers. The district court defined the claims as breach of contract and violation of KAIRA by Farm Bureau in (1) discounting health care provider bills, (2) making late PIP payments without interest, and (3) denying PIP claims without review of the claims and bills by a physician. Class certification notices were sent to the members of the classes.

### Decertification

A different district court judge took over the case in 2003. On November 17, 2003, Farm Bureau moved to decertify the classes.

### First and Third Causes of Action

On March 17, 2005, the district court ordered decertification of the two classes made up of Farm Bureau insureds and health care providers who submitted PIP claims to Farm Bureau. In doing so, the court addressed the issue of mootness. The court observed that Chamberlain and Carabetta each assert the same causes of action as defined in the order certifying the classes. Chamberlain's settlement with, and release of, Snow operated as a bar to the collection of any further unpaid PIP from Farm Bureau. Thus, Chamberlain's first and third causes of action, which relate to unpaid PIP, are now moot. Further, the court found that it is essential that Chamberlain have standing at the time the class of insureds was certified. She cannot represent a class of which she is not a member. Since her settlement with Snow had the effect of destroying her standing before the class was certified, the court ruled that her class action claims must be dismissed.

With respect to Carabetta's claims, the court found that his rights arose out of Chamberlain's assignment to him of her rights for PIP payments for his bills. Thus, the court reasoned, Chamberlain's settlement of her tort claim also had the effect of rendering all of Carabetta's claims against Farm Bureau moot except his claim for interest on late PIP payments.

### Second Cause of Action

Turning to the second cause of action, the claim for interest on late PIP payments, the district court observed that there is no

bright line rule for when interest starts to run on a PIP claim. Thus, the court concluded, each claim must be decided on its own merits, and this fact undermines the essential element of commonality to justify a class of health care providers whose bills were paid late. Accordingly, the court decertified this class but preserved Carabetta's individual claim against Farm Bureau for interest on late PIP payments.

### Chamberlain's Credit History Claim

With respect to Chamberlain's claim that Farm Bureau's actions adversely affected her credit history, the district court ruled that the element of commonality was lacking and this claim could not be asserted for a class of Farm Bureau insureds.

Chamberlain and Carabetta now pursue this interlocutory appeal.

### Chamberlain's Lack of Standing

Chamberlain challenges the court's ruling that she lacks standing to pursue her individual and class-action claims. This is an issue of law over which our review is unlimited. See *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 (2002).

Our courts do not make decisions on moot questions or abstract propositions. *In re Tax Appeal of Colorado Interstate Gas Co.*, 270 Kan. 303, 305, 14 P.3d 1099 (2000). To have standing to assert her claims, Chamberlain must assert that she has a personal stake in the outcome of the case so as to justify court action to resolve the matter. See *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 30, 59 P.3d 1003 (2002). Further, standing is an issue that can be raised during the course of litigation whenever a claim becomes moot. See *Rodarte v. Kansas Dept. of Transportation*, 30 Kan. App. 2d 172, 183, 39 P.3d 675, *rev. denied* 274 Kan. 1113 (2002). If Chamberlain no longer has an individual claim, she has no standing to prosecute a class action case. See *Winters v. Kansas Hospital Service Ass'n, Inc.*, 1 Kan. App. 2d 64, 67, 562 P.2d 98 (1977). She cannot represent a class in which she is not a member. If Chamberlain's claims became moot before the ruling on her class certification motion, both her individual and class action claims must

be dismissed. See *Steele v. Security Benefit Life Ins. Co.*, 226 Kan. 631, 636-37, 602 P.2d 1305 (1979).

### Chamberlain's Settlement with Snow

With these principles in mind, we turn to Chamberlain's settlement with Snow. To understand the consequences of that settlement, we must first review the mechanism for handling damage claims under the KAIRA, K.S.A. 40-3101 *et seq.*

One of the primary purposes of the Act is to reduce the incidents of personal injury litigation arising from auto accidents and, when litigation does occur, provide the accident victim prompt payment for certain economic losses without having to await the outcome of a suit against the tortfeasor. To that end, and subject to some unrelated exceptions, K.S.A. 40-3104 mandates liability insurance for automobiles operated on our highways. K.S.A. 40-3107 requires that each such insurance policy include PIP benefits that provide coverage for disability, funeral expenses, medical and rehabilitation expenses, as well as substitution and survivor benefits. K.S.A. 40-3107(f); 40-3103(q).

K.S.A. 40-3113a provides for reimbursement to the PIP insurance carrier of PIP benefits paid to or for its insured as a result of an automobile accident. This reimbursement can occur when the injured party reaches a settlement with, or obtains a judgment against, the tortfeasor which covers damages which duplicate the benefits already paid by the PIP carrier. It can also occur through self-help by the PIP carrier bringing a subrogation action against the tortfeasor for PIP benefits paid. K.S.A. 40-3113a(b). However, the PIP carrier has no right to bring a separate action for reimbursement during the first 18 months following the accident. K.S.A. 40-3113a(c). Here, Chamberlain sued Snow before this 18-month period expired. Thus, Farm Bureau's only recourse was to intervene in Chamberlain's personal injury suit or await a settlement or judgment. See K.S.A. 40-3113a(b).

K.S.A. 40-3113a(a) protected Chamberlain's right to sue Snow for her injuries and damages, including damages for which she received PIP benefits. However, when she settled her total claim against Snow and released him from any further liability, the set-

tlement funds, as a matter of law, duplicated the PIP benefits she had already received from her PIP carrier, and Farm Bureau was entitled to reimbursement from the settlement proceeds of the PIP benefits it had paid. See *State Farm Mut. Auto. Ins. Co. v. Kroeker*, 234 Kan. 636, 676 P.2d 66 (1984). K.S.A. 40-3113a(b) also provides that when an injured party settles with the tortfeasor before completion of PIP benefits, "the amount of such . . . settlement . . . which is in excess of the amount of [PIP] benefits paid to the date of recovery of such . . . settlement . . . shall be credited against future payments of such [PIP] benefits." Thus, an important purpose of KAIRA is achieved: The auto accident victim gets quick relief for medical bills and other expenses that cannot be put off until a suit against the tortfeasor is resolved. But the accident victim does not reap a double recovery. Recoveries by settlement or judgment that duplicate payments from the PIP carrier must be reimbursed to the PIP carrier. See *Russell v. Mackey*, 225 Kan. 588, 592 P.2d 902 (1979).

When an injured party settles his or her claim and releases the tortfeasor from all further liability arising out of the accident in which his or her damages were sustained, the only recourse for the PIP carrier, who stands in the shoes of its insured, is recovery from the injured party's settlement proceeds, not from the tortfeasor who has now been released.

This is what happened when Chamberlain settled with Snow and released him from further liability. The funds from Chamberlain's settlement with Snow constituted a credit against any claim for future PIP benefits to the extent that they exceeded the amount of PIP benefits paid to the date of the settlement. See K.S.A. 40-3113a(b). The settlement also extinguished Farm Bureau's obligation to pay any further PIP claims from Chamberlain or her health care providers, including claims previously submitted but unpaid, since the settlement bars Farm Bureau from asserting a subrogation claim for any additional PIP payments against Snow, the now-released tortfeasor.

In the present suit, Chamberlain seeks to recover unpaid PIP benefits from Farm Bureau following her settlement with Snow. If permitted to do so, she would receive a double recovery: first,

the settlement proceeds from Snow for losses for which she asserted PIP claims, and again from Farm Bureau in this action for those same losses. When she settled with Snow, Chamberlain lost her right to pursue her PIP claims against Farm Bureau. As such, she also lost standing as the representative plaintiff for the insureds' class action claims against Farm Bureau. The district court did not err by dismissing Chamberlain's individual claims and the insureds' class action claims on all PIP claims.

### Chamberlain's Assignment of Benefits

Chamberlain next argues the assignments to her healthcare providers for payment of her PIP claims did not extinguish her standing to pursue her PIP claims. Chamberlain admits that before filing suit against Farm Bureau, she assigned to her healthcare providers her right to receive the PIP benefits. In *Bolz v. State Farm Mut. Ins. Co.*, 274 Kan. 420, 423, 52 P.3d 898 (2002), the court recognized an insured's right to assign to a health care provider the insured's right to PIP benefits. An assignment passes all the assignor's title and interest to the assignee and divests the assignor of all right of control over subject matter of the assignment. See 274 Kan. at 428. Chamberlain's assignment before this action commenced divested her of her right to recover PIP benefits from Farm Bureau. As stated in *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 11, 13 P.3d 351 (2000): " 'No particular words or special form of words are necessary to effect an assignment in the absence of statutory provisions prescribing a particular mode or form.' [Citations omitted.]" The only assignment of record, the one to Carabetta, demonstrates an intent to transfer Chamberlain's right to all PIP payments. Chamberlain did not expressly reserve any rights. Farm Bureau made direct PIP payments to Chamberlain's healthcare providers based upon the assignments. Consistent with *Bolz*, Chamberlain assigned to her health care providers her rights to all PIP payments, including interest, and the right to enforce payment.

### Chamberlain's Claim for Damaged Credit Reputation

The disposition of this claim remains somewhat puzzling. It does not appear that the district court dismissed Chamberlain's individ-

ual claim, based on a lack of standing or otherwise. While the court questioned whether the commonality element had been met for a class of insureds, this claim was not one for which a class originally was certified. Since this appeal is interlocutory in nature, we leave it to the district court to deal with this claim if and when the case moves forward.

### Carabetta's Lack of Standing

Dr. Carabetta contends the district court erred by concluding he lacked standing to pursue his individual and class action claims for unpaid PIP benefits. Like Chamberlain, Carabetta argues that the settlement of the tort claim against Snow does not bar his claim.

### Chamberlain's Settlement with Snow

KAIRA does not provide for direct actions by health care providers against the PIP carriers of their patients. See K.S.A. 40-3111. Carabetta's rights are derivative. They arise from Chamberlain's assignment of benefits to him. That assignment took place before Chamberlain settled her tort claim against Snow. The general rule is that an assignee is ordinarily subject only to setoffs and defenses that existed at the time of the assignment. *OXY USA, Inc. v. Colorado Interstate Gas Co.*, 20 Kan. App. 2d 69, 79, 883 P.2d 1216 (1994). The application of this general rule would cause the Snow settlement to be, for Carabetta, a nonevent.

The application of this general rule in *OXY USA* would undermine one of the fundamental purposes of KAIRA. KAIRA provides accident victims a mechanism (*i.e.*, PIP) for prompt payment of medical and other bills before the claim against the tortfeasor is resolved. Once the claim against the tortfeasor is resolved, the duplicative settlement or judgment proceeds, over and above whatever must be reimbursed to the PIP carrier to satisfy its lien, constitute a credit for unpaid or future PIP claims. Those proceeds are in Chamberlain's hands. To allow Carabetta now to collect his unpaid bill from Farm Bureau rather than from Chamberlain, who holds the funds with which to pay Carabetta's bill, creates the double recovery the statutory scheme is designed to prevent.

Under Carabetta's theory, Chamberlain can receive medical treatment from him and he can collect for those services directly from Farm Bureau by way of this action. In the meantime, Chamberlain can obtain a duplicative recovery from Snow, and since Farm Bureau's lien does not cover these expenses claimed by Carabetta, she can keep her duplicative recovery. Further, by releasing Snow she can prevent Farm Bureau from exercising its subrogation rights against Snow for benefits it ultimately pays to Carabetta. Such a result, which obtains from application of the general rule in *OXY USA,* undermines the express intent of the legislature in establishing our Kansas no-fault auto insurance law. The general rule in *OXY USA* does not apply here. Chamberlain's settlement with Snow defeats Carabetta's claim against Farm Bureau. We note, however, that this does not leave Carabetta without a remedy. The funds with which to satisfy his bill are in Chamberlain's hands, and she is responsible for paying his bill.

### Carabetta as a Third-Party Beneficiary

Next, Carabetta claims he has standing as a third-party beneficiary of Chamberlain's Farm Bureau auto insurance policy. Though raised in the petition, the district court did not address this theory in decertifying the class.

Donee beneficiaries and creditor beneficiaries may enforce contracts made for their benefit. *In re Marriage of Shevling v. Shevling*, 278 Kan. 356, 360, 97 P.3d 1036 (2004). However, since we presume that contracting parties are acting for themselves and not others, the contract must clearly and unambiguously express the intent of the parties to benefit a third person. 278 Kan. at 361. Carabetta fails to demonstrate that when the parties entered into their contract of insurance they intended that it be, in some applicable respect, for his benefit.

### Commonality for Carabetta's Class Action Claim for Interest

Carabetta claims the district court erred by dismissing his class action claim for unpaid interest because those claims lacked commonality. As noted earlier, with respect to Carabetta's individual claim, the ultimate responsibility for payment of his bill fell upon

Chamberlain once she received her settlement proceeds from Snow. Thus, after June 3, 1999, the date of the settlement with Snow, any interest due on any unpaid medical bill is Chamberlain's responsibility. Carabetta's only possible claim for which he could represent a class of similarly situated providers is his claim for interest that accrued prior to settlement.

When it comes to certifying a class, we give substantial discretion to the district court. *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 779, 89 P.3d 908 (2004). That discretion is abused in considering a class certification issue

" 'when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination.' [Citations omitted.]" 277 Kan. at 779.

One of the statutory requirements for a class action is that "there are questions of law or fact common to the class." K.S.A. 60-223(a)(2). The district court addressed this requirement in decertifying the health care provider class. The court found that a case-by-case analysis would have to be undertaken on the claim of each health care provider class member in order to determine whether on any particular claim interest was warranted. K.S.A. 40-3110(b) requires PIP benefits to be paid within 30 days "after the insurer . . . is furnished written notice of the fact of a covered loss and of the amount of same." However, the statute also provides that "no such payment shall be deemed overdue where the insurer . . . has reasonable proof to establish that it is not responsible for the payment, notwithstanding that written notice has been furnished." K.S.A. 40-3110(b).

Whether we agree or disagree with the district court's analysis is not the issue. Here, the issue is whether the district court abused its discretion in decertifying the class. The presence of individual questions of fact may not necessarily defeat class certification. See *Dragon*, 277 Kan. at 793. Nevertheless, the district court, in the exercise of its sound discretion, may find that the presence of individualized fact issues involving the various class members undermine the statutory requirement of commonality so as to require

decertification of the class. Here, the district court did not abuse its discretion in doing so.

### A Substitute Class Representative

Finally, Chamberlain and Carabetta contend that the district court erred by refusing to allow substitution of class representatives after determining neither Chamberlain nor Carabetta had standing. The applicable rule was announced in *Sosna v. Iowa*, 419 U.S. 393, 403, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975): "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." This rule was applied in Kansas in *Steele*. If the claims of a proposed class representative became moot before the ruling on class certification, both the individual and class action claims must be dismissed. Since both Chamberlain and Carabetta lost standing before class certification, the court did not err in refusing the appointment of substitute class representatives.

Affirmed.