NOT DESIGNATED FOR PUBLICATION

No. 118,974

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MEREDITH VAUGHN, Individually and on Behalf of All Others Similarly Situated,
*Appellant*,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Opinion filed June 28, 2019. Affirmed.

*Patrick C. Smith*, of Patrick C. Smith, LLC, of Pittsburg, for appellant.

*Jay Williams* and *Paula M. Ketcham*, pro hac vice, of Schiff Hardin LLP, of Chicago, Illinois, and *Dana M. Harris* and *Emily A. Yessen*, of Harris & Hart, L.L.C., of Overland Park, for appellee.

Before GARDNER, P.J., ATCHESON and POWELL, JJ.

ATCHESON, J.: Meredith Vaughn sued United Services Automobile Association, her insurance carrier, in Crawford County District Court for medical expenses she claimed were due under the no-fault provisions of her policy as the result of injuries she received in a motor vehicle collision. After Vaughn settled with the other driver and gave him a complete release, USAA filed a motion for summary judgment on the grounds that the release extinguished her claim for payment of the medical bills. The district court granted summary judgment in accordance with a series of Kansas appellate decisions. On

1

appeal, Vaughn has neither persuaded us those cases are distinguishable nor furnished some other compelling argument for concluding the district court erred. We, therefore, affirm the judgment for USAA.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the district court decided this case on summary judgment, we consider the material facts in a light most favorable to Vaughn and give her the benefit of reasonable inferences drawn from those facts. If that review shows USAA to be entitled to judgment as a matter of law, we are obligated to affirm the district court. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1204, 308 P.3d 1238 (2013) (summary judgment standards).

Vaughn was injured in a motor vehicle collision with another driver in June 2014 for which she received medical treatment at a Wichita hospital. Hisham Abu-Salman, the other driver, was at fault for the collision. Vaughn submitted a bill from the hospital for about $6,600 and a bill from a physicians' group for $1,077 to USAA for payment under her no-fault coverage. USAA paid a portion of each bill, leaving Vaughn personally responsible for about $2,500 in medical costs, even though her policy limit for that particular coverage was $12,500. USAA has insisted it was obligated to pay only the "reasonable" cost of the treatment Vaughn received and did so.

The Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 et seq., mandates that motor vehicle liability insurance policies issued in the state require the carrier to pay for medical care and provide certain other benefits to an insured injured in a covered mishap regardless of the insured's fault or legal liability. Pertinent here, the Act aims to secure prompt payment to an injured insured for essential medical care without delay or the need for litigation. The Act also requires motor vehicle owners to purchase insurance that includes this no-fault coverage, commonly known as personal injury protection or

2

PIP benefits. A policy must provide at least $4,500 in PIP benefits for medical expenses, although an insured typically may pay for more coverage as Vaughn did. See K.S.A. 40-3103(k).

Vaughn sued USAA in August 2015 after the company refused to pay the full amount of the hospital and physician bills she submitted under the PIP provisions of her policy. The suit alleged various legal theories for recovery, including breach of contract, and Vaughn asked that the district court certify her as a class representative to sue on behalf of other USAA policyholders ostensibly denied PIP coverage in the same manner. USAA duly answered and denied it had wrongfully deprived Vaughn of any benefits due her.

In the meantime, Vaughn filed a separate action against Abu-Salman to recover for the personal injuries and other harm she suffered as a result of the collision, including economic damages for all of her medical expenses and lost wages. The Act gives an insurance company that pays PIP benefits a subrogation right against any recovery its insured may obtain from a third party legally responsible for the insured's injuries. K.S.A. 40-3113a(b). So USAA was entitled to repayment of the PIP benefits if Vaughn settled with or collected on a judgment against Abu-Salman.

In early May 2017, Vaughn's lawyer informed a representative of USAA that she likely would settle with Abu-Salman and asked USAA to waive its subrogation rights for the PIP benefits. The USAA representative responded in writing that the company "has waived its PIP subrogation rights." On May 18, Vaughn signed a release of all claims against Abu-Salman in exchange for $25,000, reflecting the limits of his motor vehicle liability insurance policy. The release stated that Vaughn "reserves her under insured claim" and that she in no way intended to waive or compromise that claim against USAA. Vaughn made a separate demand against USAA for payment on her underinsured

motorist coverage, given the extent of her compensable injuries. USAA ultimately tendered a policy limits payment to Vaughn under that coverage.

Six weeks later, USAA filed a motion for summary judgment in this case on the grounds that Vaughn's complete release of Abu-Salman extinguished her claim for PIP benefits consistent with established Kansas law. Vaughn filed a memorandum opposing the motion. Everybody agrees that only Vaughn's breach of contract claim against USAA remained at issue on summary judgment.

In a 10-page journal entry filed on January 30, 2018, the district court granted USAA's motion, relying heavily on this court's opinion in *Chamberlain v. Farm Bureau Mut. Ins. Co.*, 36 Kan. App. 2d 163, 137 P.3d 1081 (2006). The district court found the request for certification of a class action to be moot, since Vaughn had no viable legal claim and, therefore, could not serve as a class representative. Vaughn has appealed.

LEGAL ANALYSIS

Virtually from the inception of no-fault insurance and PIP benefits, the Kansas appellate courts have recognized that an insured's settlement with and complete release of a third-party tortfeasor effectively extinguishes any claims the insured might have either for additional PIP benefits from his or her insurance carrier or against the carrier's assertion of subrogation rights for PIP benefits already paid. In *Russell v. Mackey*, 225 Kan. 588, 594-95, 592 P.2d 902 (1979), the court recognized that an insurance carrier retained a PIP lien and subrogation rights when its insured settled with and released a third-party tortfeasor, even though the settlement did not appear to fully compensate the insured for her injuries.

Then, as now, the statutory lien and right of subrogation apply to "duplicative personal injury protection benefits." K.S.A. 40-3113a(b). The *Russell* court indicated PIP

4

benefits would be "duplicative" if they compensate for losses of the same character as those that underlie the action against the tortfeasor, such as medical expenses or lost wages. That the third-party recovery might be less than the insured's actual damages doesn't negate the insurer's right to reimbursement from the insured for the PIP benefits. See *Russell*, 225 Kan. at 594-95. The court unmistakably reiterated this rule in *State Farm Mut. Auto. Ins. Co. v. Kroeker*, 234 Kan. 636, 645-46, 676 P.2d 66 (1984). The court also held that a settlement of personal injury claims with a tortfeasor in a motor vehicle collision case presumptively would be duplicative of PIP benefits, given the usual scope of those claims. 234 Kan. at 644.

In addition to lien and subrogation rights, the Act allows the insurer a credit against the insured's settlement or recovery from a third-party tortfeasor for "future payments" of PIP benefits. K.S.A. 40-3113a(b); *Farmers Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 227 Kan. 533, 538, 608 P.2d 923 (1980). A logical application of that statutory credit along with the rules recognized in *Russell* and *Kroeker* would cut off an insured's claim for disputed (and unpaid) PIP benefits upon a settlement with and full release of a third-party tortfeasor. If actually owed, the PIP benefits presumably would have been paid earlier, making them subject to the statutory subrogation rights. Alternatively, they could be considered future, albeit late, payments bringing them within the statutory credit. Either way, after settling with the third-party tortfeasor, the insured would no longer have a claim that he or she had received less in PIP benefits than the Act requires.

More recently in *Chamberlain*, this court acknowledged and restated the principles laid out in *Russell* and *Kroeker*. 36 Kan. App. 2d at 172-73. In turn, the court recognized that Chamberlain's settlement with and release of Snow, the other driver responsible for the collision in which she was injured, relieved Farm Bureau, her insurance carrier, of any "obligation to pay any further PIP claims . . . including claims previously submitted but unpaid." 36 Kan. App. 2d at 173. As we indicated, the *Chamberlain* court's determination reflects the logical application of the statutory protections for insurers

contracting to provide PIP benefits combined with the rules governing settlements and other recoveries from third-party tortfeasors developed in *Russell* and *Kroeker*. The court aptly distilled the effect of the law this way: "When she settled with Snow, Chamberlain lost her right to pursue her PIP claims against Farm Bureau." 36 Kan. App. 2d at 174.

Given the undisputed facts presented on summary judgment, the district court correctly relied on *Chamberlain* and necessarily *Russell* and *Kroeker*, as the precedent upon which *Chamberlain* rests, to find for USAA and against Vaughn.

On appeal, Vaughn has offered a series of legal rejoinders in an effort to show the district court's reasoning and result to be flawed. We obviously have been unpersuaded and pause to explain why.

• Vaughn represents in her brief (without citation to the record) that USAA has retained a company to "audit" PIP claims using a computer program to determine how much should be paid on a particular bill for medical services. Based on the characterization of PIP coverage as a type of accident and sickness insurance in *Bolz v. State Farm Mut. Ins. Co.*, 274 Kan. 420, 434, 52 P.3d 898 (2002), Vaughn submits the USAA policy omits language required under K.S.A. 40-2202 related to indemnification and to payment of benefits based on customary or reasonable charges for those services. She also contends the computer model does not conform to statutory directives for design and periodic updating of materials used to determine reasonable charges. Vaughn then argues that USAA "[d]espite not satisfying the statutory requirements . . . has withheld PIP benefits from its insureds for years," referring to the members of the putative class she asked to be certified in her petition.

The entire argument, however, is a legal non sequitur. First, the factual premises are not cited to the record and should be disregarded for that reason alone. See Kansas Supreme Court Rule 6.02(a)(4) (2019 Kan. S. Ct. R. 34) (court may presume facts

6

presented without citation to volume and page in record on appeal are without support). We don't rely on that deficiency to reject Vaughn's argument. Even assuming USAA has used some means to audit and then reduce certain claims for PIP benefits, the rest of the argument falters. Again assuming the policy USAA issued to Vaughn should have included the notices outlined in K.S.A. 40-2202 and should have otherwise complied with the statutes governing accident and sickness policies, the argument fails to advance a legal basis for Vaughn to recover the disputed PIP benefits or, more particularly, why the claim for unpaid benefits survived the settlement with and release of Abu-Salman. We see none.

Perhaps Vaughn could have asserted some sort of claim against USAA for noncompliance with K.S.A. 40-2202. We offer no opinion on that score. But even if she did, we don't see how an appropriate remedy would include payment of the disputed benefits for the medical services she received from the hospital and the physicians' group. Vaughn offers no argument to that effect. We suppose she could be saying noncompliance with K.S.A. 40-2202 amounts to a breach of contract, so she may recover on *any* breach of the contract—a theory that would at least reach her claim for improperly withheld PIP benefits, which, if proved, would be a breach of contract. But the law of contracts doesn't work that way. An aggrieved party is entitled to relief tailored to remedy a particular breach. See *Rosen v. Hartstein*, No. 108,479, 2014 WL 278717, at *8 (Kan. App. 2014) (unpublished opinion) (aggrieved party must elect remedy appropriate to particular breach of contract). The argument is factually and legally specious as an effort to show the district court erred in entering judgment for USAA on Vaughn's claim for unpaid PIP benefits. A purported violation of K.S.A. 40-2202 would not suspend the legal effect of a settlement and release of a third-party tortfeasor on a claim for unpaid PIP benefits.

• Vaughn tries to distinguish *Chamberlain* as applicable authority because Chamberlain was made whole for her injuries through the settlement with Snow, the

7

third-party tortfeasor. Vaughn contends her situation is different because she was not fully compensated by the $25,000 she received from Abu-Salman, as evidenced by her recovery of underinsured benefits from USAA. For purposes of addressing the argument, we assume the receipt of underinsured benefits reasonably supports an inference that the settlement amount was less than Vaughn's actual damages. And while that may be a factual difference between *Chamberlain* and this case, it is not a legally significant difference.

This court's rationale didn't depend on Chamberlain obtaining a full recovery from Snow—the opinion doesn't even mention that aspect of the settlement in explaining its legal analysis and conclusion. See *Skyscapes of Castle Pines, LLC v. Fischer*, No. 110,444, 2014 WL 5801042, at *4 (Kan. App. 2014) (unpublished opinion) (One appellate court cannot assume another appellate court has relied on unstated facts in its opinion that would render that case analogous to the circumstances under review in the pending appeal.). In short, we must take the relevant facts in *Chamberlain* to be the recited facts. Moreover, *Russell* and *Kroeker* independently undercut Vaughn's argument.

Vaughn also suggests *Chamberlain* is distinguishable because the motor vehicle collision did not give rise to an underinsured claim, Chamberlain did not give advance notice to Farm Bureau of the settlement with Snow, and Farm Bureau did not waive its PIP subrogation rights. Again, those are factual differences, but they have no legal significance. Vaughn seems to say that in combination they show the PIP benefits are not "duplicative" of the settlement amount, so she may pursue her claim for additional benefits she contends USAA wrongfully withheld. We needn't belabor the point. As the caselaw, particularly *Kroeker*, establishes, the fact of settlement—not the amount of the settlement—coupled with a full release renders the PIP benefits duplicative within the meaning of K.S.A. 40-3113a(b).[*]

8

[*]Vaughn does not contend the reservation in the release she gave Abu-Salman for her underinsured claim independently precludes summary judgment. Something less than a full release to the third-party tortfeasor, depending upon its scope, presumably would preserve a claim for wrongfully withheld PIP benefits and might stymie the insurer's assertion of its subrogation rights for the PIP benefits it did pay. We needn't explore the ramifications of partial releases; the legal permutations would be expansive, turning on the specific terms of a release. The issue doesn't arise in this case. Vaughn clearly released all of her claims against Abu-Salman. Her underinsured claim would lie against USAA and would be a breach of the insurance contract distinct from the dispute over the PIP benefits.

Vaughn similarly does not contend that USAA's waiver of its subrogation rights validates her claim for unpaid benefits. The implicit concession is a sound one. USAA's agreement to relinquish its right to pull back the PIP benefits already paid Vaughn cannot be construed as some sort of complementary admission of liability for the disputed PIP benefits it declined to pay.

• Vaughn cites *Kelley v. Progressive Northwestern Ins. Co.*, No. 113,040, 2016 WL 1545854 (Kan. App. 2016) (unpublished opinion), as a well-reasoned opinion that supports reversing the district court. Although *Kelley* may be a carefully crafted decision, it is factually distinguishable and, therefore, won't do the work Vaughn would like it to here. The *Kelley* panel found disputed issues of material fact that precluded summary judgment for the insurance carrier on Fallis' claim for PIP benefits. (Fallis was married to Kelley, the named insured on the policy. The parties also litigated whether Fallis was covered under the policy, an issue that's irrelevant here.) The insurance carrier argued that Fallis' settlement with and release of the third-party tortfeasor extinguished his claim for PIP benefits. In that case, Fallis notified the insurance carrier of the impending settlement and requested a waiver of subrogation. The insurance carrier responded that it "will be waiving [its] subrogation rights." 2016 WL 1545854, at *1. After the settlement, the insurance carrier rejected a claim for additional PIP benefits as outside the policy coverage but did not mention or rely on the settlement as a reason for doing so.

The district court in *Kelley* granted summary judgment for the insurance carrier, finding the claim for additional PIP benefits to be precluded by Fallis' settlement and

9

release. On appeal, the panel held that the ambiguous language of the written subrogation waiver coupled with the insurance carrier's reasons for denying the postsettlement claim for PIP benefits created a disputed issue of material fact as to the insurance carrier's intentions. The panel simply remanded the case to the district court for further proceedings with the understanding that those proceedings would resolve the ambiguity in the evidence submitted on the summary judgment motion. 2016 WL 1545854, at *7-9.

Vaughn presents *Kelley* as if the panel ruled for Fallis on the merits. But the presentation invites an erroneous (and quite misleading) conclusion about the legal significance of the opinion. We have no need to remand in this case because there was no comparable ambiguity in USAA's statements or actions pertaining to the unpaid PIP benefits. In short, the material facts here are undisputed and support the district court's ruling. As a result, *Kelley* may be sound given the ambiguities in the factual record the parties offered on summary judgment in that case, but it is inapposite here precisely because there are no comparable disputed or ambiguous material facts.

In sum, as we have said, the district court correctly applied the law to the undisputed facts in finding that Vaughn's settlement with and release of Abu-Salman extinguished her breach of contract claim against USAA for unpaid PIP benefits. Vaughn has neither pointed to disputed material facts nor legal error that would require us to reverse the judgment the district court entered for USAA. In turn, the district court properly treated the request for class certification as moot for want of a viable class representative.

Affirmed.