No. 102,789

RICK GRAHAM and LISA GRAHAM, *Appellees*, v. ANGELA HERRING as Administrator for the ESTATE OF ELIZABETH A. JONES, *Appellant*.

(305 P.3d 585)

Opinion filed July 12, 2013.

*Stephen M. Kerwick*, of Fouston Siefkin LLP, of Wichita, argued the cause, and *Amy S. Lemley* and *Bradley C. Mirakian*, of the same firm, were with him on the briefs for appellant.

*Gregory C. Graffman*, of Geisert, Wunsch, Watkins & Graffman, of Kingman, argued the cause, and *Theodore C. Geisert* and *Curtis E. Watkins*, of the same firm, were with him on the briefs for appellees.

The opinion of the court was delivered by

JOHNSON, J.: When she died, Elizabeth Jones was pursuing various counterclaims against Rick and Lisa Graham, including allegations of breach of fiduciary duty, breach of contract, fraud, and conversion. The administratrix of her estate, Angela Herring, sought to be substituted for Jones in the Graham lawsuit. Ultimately, the district court dismissed the action based upon its determination that substitution had been untimely under K.S.A. 60-225(a)(1).

The district court based its ruling in part on the 7-month gap between the filing of the motion for substitution and the hearing on that motion, and in part upon its belief that it was not required to consider prejudice before dismissing an action under K.S.A. 60-225. The Court of Appeals reversed the district court, finding that

a determination of whether a motion for substitution has been made within a "reasonable time" requires consideration of the circumstances of each case, including, (1) the diligence of the party seeking substitution; (2) whether any other party would be prejudiced by any delay; and (3) whether the party to be substituted has shown that the action or defense has merit. *Graham v. Herring*, 44 Kan. App. 2d 1131, 1133-34, 242 P.3d 253 (2010).

We granted the Grahams' petition for review, in part to address an apparent split of authority in the Court of Appeals regarding whether prejudice has any role in the determination of whether substitution under K.S.A. 2012 Supp. 60-225(a)(1) was made within a reasonable time so as to avoid dismissal of the action. We affirm the Court of Appeals reversal of the district court's dismissal of the action, albeit we provide a different direction on the analysis the district court should employ on remand to determine whether the substitution motion was filed within a reasonable time under K.S.A. 2012 Supp. 60-225(a)(1).

FACTUAL AND PROCEDURAL OVERVIEW

The seeds for the controversy between Jones and the Grahams were sown when Jones developed severe health problems in 2000. At the time, Jones was raising cattle on several hundred acres of land she owned in Harper County, Kansas, and Alfalfa County, Oklahoma. She was friends with Rick Graham and made an oral agreement with him to assist with the cattle operation in exchange for him to share in the proceeds from cattle sales. In 2004, after being diagnosed with end-stage renal failure, Jones appointed Graham as attorney-in-fact to manage all of her property, financial, and personal affairs, together with the power to make health care decisions. Jones also contracted with Graham to deed him all of her agricultural land in exchange for Graham's agreement to assume a small mortgage on the property and to continue the cattle operation, splitting the net proceeds equally between himself and Jones. Jones carved out a retained life estate on a tract containing her residence.

The controversy sprouted when Jones perceived that Graham was not fulfilling his end of the bargain and was taking advantage

of her. Jones revoked the power of attorney in 2005 and declared the contract rescinded in March 2006. Graham demanded that Jones vacate all lands outside the boundary of land she had retained for a residence.

The controversy matured on June 1, 2006, when Rick and Lisa Graham filed a petition for a protection from stalking order against Jones and Jones counterclaimed for a protection against stalking order against the Grahams, as well as pursuing causes of action for breach of fiduciary duty, breach of contract, fraud, and conversion.

Jones died on June 27, 2007, while her counterclaims against the Grahams were pending. On July 2, 2007, the Grahams filed a suggestion of death on the record. Apparently, Jones' attorney took no steps to continue to pursue Jones' claims. Angela Herring, Jones' relative, later asserted that Jones' attorney led her to believe that the claims against the Grahams could not be pursued after Jones' death. On April 17, 2008, the Grahams filed a motion to dismiss the lawsuit. That pleading prompted Herring to contact another attorney, Alan C. Goering, who effected the commencement of estate proceedings for Jones; obtained the appointment of Herring as administratrix of the Jones estate; and filed a motion to substitute the estate as the claimant against the Grahams.

Neither the motion to dismiss nor the motion for substitution was set for hearing. Rather, the attorneys proceeded with discovery. Goering advised Herring that the Grahams' attorney, David M. Hall, had indicated that the motion for substitution should resolve the motion to dismiss, albeit Hall would later advise Goering that the Grahams would not consent to the substitution. Goering made several attempts at taking the Grahams' deposition, until July 2008 when the Grahams demanded that Goering withdraw as the estate's attorney because of an alleged conflict of interest. Goering withdrew and Amy S. Lemley of Foulston Siefkin LLP entered her appearance on behalf of Herring.

Lemley continued to attempt to depose the Grahams. When the Grahams refused to appear at a deposition scheduled for November 10, 2008, Lemley moved for sanctions and set the matter for hearing on December 15, 2008. Lemley also asked that the court

resolve the motion for substitution immediately prior to the hearing on sanctions.

On November 26, 2008, Hall filed a motion to withdraw as the Grahams' counsel, alleging that his clients' conduct indicated that the attorney/client relationship "has been destroyed" and that his clients' actions had made it "unreasonably difficult for [Hall] to carry out his employment effectively." At the December 3, 2008, hearing on the withdrawal motion, Hall answered in the affirmative when asked by the district court if he had sent the Grahams a copy of Herring's motion for sanctions and had notified them of the December 15, 2008, hearing date on that and other motions. The district court granted Hall leave to withdraw and recited on the record that "the burden is on [the Grahams] to either request a continuance or have another counsel enter an appearance and request a continuance. Absent that, we'll be here on the 15th for hearing."

The Grahams did not appear either in person or by counsel at the December 15, 2008, motion hearing. At that hearing, the district court first granted the motion to substitute Jones' estate as the counterclaimant. Then, the district court granted the estate default judgment against the Grahams as a sanction for "plaintiffs' failure to appear at the video depositions, failure to cooperate in discovery, and failure to totally appear today or defend on any of the motions pending before the Court, including their own motion for enlargement of time and a protective order." After dismissing the petitions for protection from stalking as moot, the district court found that the allegations in Jones' counterclaim were true and correct, leading to findings that, *inter alia*, the Grahams had breached their fiduciary duty to Jones and had materially breached their contract with Jones. The court rescinded the contract, ordered the Grahams to return the converted property within 30 days, and left open the amount of monetary damages that would be assessed against the Grahams.

The Grahams, through newly retained counsel, filed a Motion to Reconsider, Set Aside Default Judgment, Stay Execution, and Dismiss Counterclaims. The Grahams claimed that they had no knowledge that Hall had filed motions on their behalf; or that he

had withdrawn as their counsel; or that a hearing was scheduled for December 15, 2008; or that Jones' estate was seeking default judgment against them. They argued that the district court had lost subject matter jurisdiction to enter a default judgment because a proper substitution had not occurred. The district court conducted a hearing on the motion and took the matter under advisement.

In a letter opinion, the court held that it lacked jurisdiction to enter the default judgment because the estate was not substituted for Jones within a "reasonable time," as required by K.S.A. 60-225(a)(1). The district court identified and appeared to rely upon four time periods: (1) The 10 months between the July 2007 filing of the suggestion of Jones' death and the May 2008 filing of the motion to substitute Jones' estate as the counterclaimant; (2) the 7 months between the filing of the motion to substitute and the December 15, 2008, order of substitution; (3) the 4-month delay between Lemley's entry of appearance in August 2008 (replacing the conflicted Goering who had filed the motion to substitute) and the December 15, 2008, order of substitution; and (4) the 17 months from the July 2007 suggestion of death to the date substitution was "actually effectuated" on December 15, 2008. Further, the district court opined that, pursuant to Court of Appeals precedent, it was "not required to use a prejudice analysis in determining the issues herein." Ultimately, the district court "reluctantly" concluded that the substitution motion was not timely filed, "and, more importantly, the motion for substitution was not heard or granted within a reasonable time thereafter." Accordingly, the court voided the default judgment and dismissed Jones' counterclaims.

The estate responded with a motion to reconsider the dismissal of the counterclaims. The presiding district judge recused from the case *sua sponte*, and Judge William Lyle, Jr. was appointed to hear the motion for reconsideration. In his memorandum opinion denying the motion to reconsider, Judge Lyle opined "that the reasonable time in the statute relates to the time from the suggestion of death being filed to the filing of the motion to substitute." In other words, Judge Lyle did not believe that the 7-month delay awaiting the court's order on the motion for substitution was part

of the consideration of whether the "motion for substitution [was] made within a reasonable time after the death is suggested upon the record" under 60-225(a)(1). Nevertheless, Judge Lyle read the district court's letter opinion as finding that there was no reasonable explanation for any of the delays and that the substitution motion had not been filed within a reasonable time after Jones' death, so that the fact that the district court also found the time to get the motion heard to be unreasonable did not negate the validity of the proper holding. In Judge Lyle's view, he was not acting as an appellate court, and, given that there were no new facts set forth in the motion to reconsider, he could not declare the district court's findings to be erroneous. Following Judge Lyle's denial of the estate's motion to reconsider, the estate timely appealed to the Court of Appeals.

The Court of Appeals first analyzed how a district court should go about determining whether a substitution motion has been made within a reasonable time and concluded that "the court should consider all relevant circumstances, including the diligence of the party seeking substitution, whether any other party would be prejudiced by the delay, and whether the party to be substituted has shown that the action or defense has merit." *Graham*, 44 Kan. App. 2d 1131, Syl. The panel found that two aspects of the district court's ruling indicated that it had applied an incorrect legal standard. First, the district court's emphasis on the time period between the filing of the substitution motion and its being heard was misplaced because that particular delay was not a relevant factor under the plain language of K.S.A. 60-225(a). Second, the district court's explicit refusal to consider whether other parties would be prejudiced by the delayed filing of the substitution motion foreclosed consideration of a relevant factor. 44 Kan. App. 2d at 1135-36.

The Court of Appeals pointed out that when a district court applies an incorrect legal standard, it necessarily abuses its discretion. 44 Kan. App. 2d at 1136; see *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 331, 277 P.3d 1062 (2012) (abuse of discretion occurs if discretion guided by erroneous legal conclusion or goes outside framework of or fails to consider proper

statutory limitations or legal standards). Accordingly, the Court of Appeals reversed the dismissal of Jones' counterclaims and remanded the case for the district court to apply the correct legal standards in determining whether the request to substitute Herring as the successor to Jones was made within a reasonable time. *Graham*, 44 Kan. App. 2d at 1137. We granted the Grahams' petition for review of the Court of Appeals decision.

### REASONABLE TIME TO MOVE FOR SUBSTITUTION UNDER K.S.A. 2012 SUPP. 60-225(a)(1)

In their petition for review to this court, the Grahams assert that "[t]he primary issue before the Court is whether the district court properly applied K.S.A. 60-225(a)(1) in determining whether [the estate] filed a motion for substitution in a reasonable time period as required by this statute." Accordingly, we start by looking at the applicable statute. The statutory language relating to the substitution of a party due to death remained unchanged from 1964, when the "reasonable time" language was first employed, until the statute was amended in 2010. See 4 Kansas Law and Practice § 60-225 (5th ed. 2012); L. 1963, ch. 303, secs. 60-225, 60-2610. But, as the Court of Appeals noted, the 2010 amendments to K.S.A. 60-225(a)(1) do not affect any of the issues presented in this case. See *Graham*, 44 Kan. App. 2d at 1132. Accordingly, like the panel, we will recite the current version of K.S.A. 60-225(a)(1):

"(a) *Death.* (1) *Substitution if the claim is not extinguished.* If a party dies and the claim is not extinguished, the court must on motion order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within a reasonable time after service of a statement noting the death, the action by or against the decedent must be dismissed." K.S.A. 2012 Supp. 60-225(a)(1).

The Grahams' specific complaint is that the Court of Appeals failed to follow its own precedent in *Johnson v. Farm Bureau Mut. Ins. Co., Inc.*, No. 93,048, 2005 WL 697495 (Kan. App. 2005) (unpublished opinion), when it reversed the district court's finding that the court was not required to consider prejudice when determining whether a motion for substitution had been filed within a reasonable time. Additionally, the Grahams contend that the panel

did not specifically address their jurisdictional argument, *i.e.*, the district court lacked jurisdiction to grant any relief to any party until the court ordered the substitution of a proper party.

*Standards of Review/Rules of Statutory Construction*

Ordinarily, "[i]n determining whether to dismiss under [K.S.A. 60-225(a)(1)] the trial court has discretion to determine what is a reasonable time to move for substitution." *Livingston v. Estate of Bias*, 9 Kan. App. 2d 146, 147, 673 P.2d 1197 (1984) (*Livingston II*). But as noted by the Court of Appeals, an abuse of discretion necessarily results when the district court applies incorrect legal standards in the exercise of its discretion. *Leegin Creative Leather Products, Inc.*, 294 Kan. at 331. In turn, the determination of the correct legal standards to apply in the exercise of discretion involves statutory interpretation which is a question of law over which appellate courts have unlimited review. *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012). Likewise, whether jurisdiction exists is a question of law subject to unlimited review. *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). We first attempt to ascertain legislative intent by reading the plain language of the statute and giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. But when the statute's language or text is unclear or ambiguous, we "employ canons of construction, legislative history, or other background considerations to divine the legislature's intent and construe the statute accordingly." *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 564-65, 276 P.3d 188 (2012).

*Analysis*

We begin by briefly disposing of the Grahams' suggestion that we do not have jurisdiction to consider the question of whether the district court erroneously dismissed Jones' counterclaims. See *Rivera v. Cimarron Dairy*, 267 Kan. 865, 868, 988 P.2d 235 (1999) (objection based on lack of jurisdiction may be raised at any time including for first time on appeal or on appellate court's own motion). "Subject matter jurisdiction refers to the power of a court to hear and decide a particular type of action." *Frazier v. Goudschaal*, 296 Kan. 730, Syl. ¶ 1, 295 P.3d 542 (2013).

In their brief to the Court of Appeals, the Grahams argued that the district court lost jurisdiction upon the death of Jones and never regained it again, so that the only action the district court was authorized to take was to dismiss the action. That argument is belied by the plain language of K.S.A. 60-225(e) which was applicable at the time and which said, in relevant part, that "[a]n attorney representing a party who dies . . . may, in order to protect rights and avoid time limitations, continue such representation in the name of the original party until there has been a substitution therefor." If the action could have been continued by the decedent's attorney until substitution had been effected, then, by necessity, the court must have possessed the power to hear and decide matters during that continuation period. In turn, that means, by definition, the court retained subject matter jurisdiction after the party's death and during the continuation period described in K.S.A. 60-225(e). Consequently, contrary to the Grahams' argument, a party's death did not automatically terminate the district court's subject matter jurisdiction over the case.

Likewise, the language of K.S.A. 2012 Supp. 60-225(a)(1) contradicts the notion that the death of a party actuates a loss of subject matter jurisdiction requiring dismissal. To the contrary, the provision requires that "the court *must* on motion order substitution of the proper party." (Emphasis added.) K.S.A. 2012 Supp. 60-225(a)(1). Dismissal is directed by the statute only if there is a proper service of a suggestion of death on the record and only if a motion for substitution is not made within a reasonable time after

that properly served suggestion of death. Obviously, then, the district court must have subject matter jurisdiction to make those findings that are requisite to dismissal; the defendant's allegation that the motion to substitute was untimely does not, by itself, deprive the district court of subject matter jurisdiction. *Cf. Goudschaal*, 296 Kan. at 745 (court had jurisdiction to evaluate contract's legality notwithstanding defendant's claim that contract unenforceable). Moreover, given that the district court had the power to hear and decide whether the motion to substitute was filed within a reasonable time of the suggestion of death, we have subject matter jurisdiction over the appeal of that decision. *Cf. Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009) (if district court lacks jurisdiction, appellate court does not acquire jurisdiction over subject matter on appeal). We therefore reject the Grahams' subject matter jurisdiction argument and turn to the merits.

As noted above, the Court of Appeals found an abuse of discretion in two respects:

"[T]he district court's ruling on the substitution motion emphasized the delay in the court's own consideration of that motion without any finding that this delay was due in any way to bad faith by Herring, and its ruling was made without considering whether the Grahams were prejudiced by the timing of the motion's filing." 44 Kan. App. 2d at 1136.

Both Judge Lyle and the Court of Appeals found that the time period subject to the reasonableness analysis of K.S.A. 2012 Supp. 60-225(a)(1) does not extend past the date on which the motion to substitute is filed. That position is supported by the plain language of the statute, which refers to the time that the motion is "made"; it does not refer to the time that the motion is heard, ruled upon, or effectuated. K.S.A. 2012 Supp. 60-225(a)(1). As the Court of Appeals suggested, a movant might act deceptively or in bad faith so as to influence the trial court's discretionary decision to grant the substitution motion. But the *court's* delay in exercising its authority to rule on the motion is not part of the "reasonable time" calculus. See Supreme Court Rule 133(c)(2) (2012 Kan. Ct. R. Annot. 238) (if no party requests oral argument, court may set

matter for hearing or rule on motion immediately and communicate ruling to parties).

In their supplemental brief to this court, the Grahams concede that "the time periods after the motion's filing are not germane to the actual determination required under the statute." But they contend that the district court's consideration of other periods of delay does not "change or disturb the fact that the district court . . . found that the substitution was not done in a reasonable time after the suggestion of death was placed on the record, which is what is statutorily required." In other words, the Grahams ascribe to Judge Lyle's rationale that the district court's mention of other time periods was merely cumulative to the correct finding and, therefore, the error was harmless. We cannot agree.

The district court's emphasis on the superfluous time periods belies the notion that they did not impact the ultimate decision to deny the substitution motion. Even the court's letter opinion, in "reluctantly conclud[ing]" that the substitution motion was not made within a reasonable time after Jones' death, recited that "more importantly, the motion for substitution was not heard or granted within a reasonable time thereafter." If the district court deemed the 7-month postfiling delay to be more important to its decision than the 10-month prefiling delay, we cannot declare the erroneous consideration of the postfiling delay to be harmless error. In other words, the district court's reliance on that incorrect legal standard—the irrelevant postfiling time period—was an abuse of discretion that would warrant reversal, standing alone.

Before moving on, we pause to clarify or rectify the language employed in *Long v. Riggs*, 5 Kan. App. 2d 416, 419, 617 P.2d 1270 (1980), upon which the district court relied to consider the 17-month period between the suggestion of death and order of substitution. The *Riggs* opinion recited that "no substitution of parties was *effectuated*." (Emphasis added.) 5 Kan. App. 2d at 418. The trial court interpreted this to mean that the relevant time period to charge against the substituting party does not end until substitution has been ordered. We disavow that notion today. To the extent that *Riggs* intended the term "effectuated" to mean

anything other than the time when the motion for substitution is filed, it is overruled and disapproved.

Next, we move to a consideration of the Grahams' principal argument that prejudice should not be a factor in assessing the reasonable time within which to make a motion for substitution. Citing to several other Court of Appeals cases finding shorter time periods to be unreasonable, the Grahams suggest that the analysis is purely temporal and that any substitution delay over 6 months is always unreasonable. In both *Riggs*, and *Livingston v. Bias*, 7 Kan. App. 2d 287, 290, 640 P.2d 362 (1982) (*Livingston I*), the Court of Appeals found that a "reasonable time" implies a requirement of due diligence. *Riggs* found that a delay of 7 months from the plaintiff's death was unreasonable. 5 Kan. App. 2d at 418-19. *Livingston I* found a delay of 6 months from the time the defendant's death was noted on the record was unreasonable. *Livingston I*, 7 Kan. App. at 290. Likewise, in *Ellison v. Mano Industries, Inc.*, No. 94,977, 2006 WL 1237270 (Kan. App. 2006) (unpublished opinion), *rev. denied* 282 Kan. 788 (2006), an unjustified delay of 8 months between the suggestion of death and the motion to substitute was found to be unreasonable. 2006 WL 1237270, at *5-6; see also *Bigler v. State ex rel. Kansas Health Policy Authority*, No. 106,534, 2012 WL 1920802, at *3 (Kan. App. 2012) (unpublished opinion) (when motion for substitution not made within 24 months after death, "reasonable time" period under K.S.A. 60-225[a] had clearly expired); *Davis v. Davis*, No. 94,941, 2006 WL 2716057, at *2 (Kan. App. 2006) (unpublished opinion) (finding that more than 1 year from time counsel provided notice of death was unreasonable time).

But the fact that our statute does not use a fixed time period contradicts the argument that the statutory "reasonable time" was intended to establish any bright-line rule. Before the adoption of K.S.A. 60-225 in 1963 established the reasonable time standard, Kansas had a fixed period of 1 year within which to substitute for a deceased party. Compare G.S. 1949, 60-3214 and G.S. 1949, 60-3215 with K.S.A. 60-225 and K.S.A. 2012 Supp. 60-225; see L. 1963, ch. 303, secs. 60-225, 60-2609, 60-2610 (repealing Chapter 60 of General Statutes of 1949 effective January 1, 1964, and add-

ing K.S.A. 60-225). Interestingly, the House Judiciary Committee minutes reflect that the Kansas code was rewritten to follow the federal rules. House Judiciary Committee Minutes, Tuesday, January 15, 1963. But the legislature did not draft K.S.A. 60-225(a) in conformance with the corresponding Federal Rules of Civil Procedure 25(a). The 1963 amendment to Fed. R. Civ. Proc. 25(a) reduced the time period for substitution in federal courts from 2 years after death to 90 days after service of a statement noting the death. The Kansas Legislature's elimination of the prior 1-year fixed period and rejection of the federal· 90-day fixed period certainly suggests a legislative intent to create a more flexible standard in this state. See *Brennan v. Kansas Insurance Guaranty Ass'n,* 293 Kan. 446, 458, 264 P.3d 102 (2011) (legislature's revision of existing law creates presumption that legislature intended to change preamendment law).

The Court of Appeals panel interpreted K.S.A. 2012 Supp. 60-225(a)(1)'s "reasonable time" requirement as requiring the district court to consider all the circumstances that might be relevant but noted that specific consideration should be given to three factors: (1) the diligence of the party seeking substitution; (2) whether any other party would be prejudiced by any delay; and (3) whether the party to be substituted has shown that the action or defense has merit. 44 Kan. App. 2d at 1133-34. The panel drew the specific factors from the caselaw in New York, one of the few states with a "reasonable time" standard, rather than a fixed time period. *McDonnell v. Draizin,* 24 App. Div. 3d 628, 629, 808 N.Y.S.2d 398 (2005) (New York requires courts to consider all circumstances, including diligence of party seeking substitution, prejudice to other parties, and whether party to be substituted has shown action or defense has merit).

The Grahams complain that, by including prejudice as a factor, this panel of the Court of Appeals rejected the holding in a prior, unpublished Court of Appeals opinion, *Johnson,* 2005 WL 697495, upon which the district court specifically relied. They point to the following recitation from the *Johnson* panel:

"There is simply no requirement in K.S.A. 60-225(a)(1) that a party must prove prejudice. In fact, once the trial court determines that a 'reasonable time' has

passed, it has no choice but to dismiss the action. There is no language that even implies that prejudice should be a consideration for the trial court, and we are unwilling to read something into the statute when it was clearly not intended by the legislature." 2005 WL 697495, at *2.

The Grahams point to a prior decision of this court for the holding that there is "no authority for one panel of the Court of Appeals to disapprove or overrule a decision of another panel of the same court." *In re Marriage of Cray*, 254 Kan. 376, 382, 867 P.2d 291 (1994). But in *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010), we held that a Court of Appeals panel had the right to disagree with a previous panel of the same court. Moreover, pursuant to our Supreme Court Rule 7.04(g)(2)(A) (2012 Kan. Ct. R. Annot. 58), an unpublished memorandum opinion is not binding precedent, except as may occur through the doctrines of law of the case, res judicata, or collateral estoppel. Here, the Grahams do not assert, and we do not discern, the existence of one of the excepted doctrines. Therefore, *Johnson* was not binding precedent upon the Court of Appeals panel in this case, and it was free to reach its own conclusions about the role prejudice should play in a K.S.A. 2012 Supp. 60-225(a)(1) substitution.

Nevertheless, *Johnson* presented the prejudice issue in a slightly different context. *Johnson* involved Lawrence Johnson's May 2003 action for breach of an insurance contract, in which his daughter and caretaker, Connie June Johnson, participated as Lawrence's attorney-in-fact under a durable power of attorney. Lawrence died in July 2003, and Connie's attorney filed a suggestion of death in September 2003. In October 2003, the trial court ordered that an executor or administrator of Lawrence's estate be substituted as the plaintiff in the lawsuit within 60 days. When Connie failed to comply with the court order for substitution by April 2004, some 4 months beyond the court's deadline, the insurance company filed a motion to dismiss with prejudice, citing to K.S.A. 60-225. After oral argument, the district court held that, because no party had been substituted for Lawrence and because Connie's status as attorney-in-fact had terminated with Lawrence's death, the action should be dismissed.

In the appeal to the Court of Appeals, the panel opined that Connie had been afforded plenty of time to make the substitution motion, especially given that the trial court had essentially told her what to do to create the proper party to substitute and had ordered a time frame within which to do it. But Connie argued that, notwithstanding an unreasonable delay in her moving for substitution, the court could not dismiss the case without specifically finding that the insurance company had been prejudiced by the delay. In other words, she argued that a prejudice analysis was required, independent of and in addition to the reasonable time analysis. The panel rejected that notion, finding that "once the trial court determines that a 'reasonable time' has passed, it has no choice but to dismiss the action." 2005 WL 697495, at *2.

Unfortunately, the *Johnson* opinion painted with too broad a brush when it said that the statute did not permit even an implication that the district court could consider prejudice. The panel here refuted that broad prohibition against considering prejudice and supported its totality of the circumstances approach by analogizing to the manner in which other, similar statutory provisions had been interpreted. It looked to *In re Marriage of Leedy*, 279 Kan. 311, 109 P.3d 1130 (2005), where we interpreted K.S.A. 60-260, dealing with relief from judgment. There, we found that " '[w]hat constitutes a "reasonable time" for seeking relief from a judgment depends on the facts of each case; relevant considerations include whether parties have been prejudiced by the delay and whether good cause has been shown for failing to take action sooner.' " 279 Kan. at 324. Likewise, the panel compared K.S.A. 2012 Supp. 60-225(a)(1) to K.S.A. 2012 Supp. 60-217(a)(3), the statute providing that an action may not be dismissed for failure to include the real party in interest "until, after an objection, a reasonable time has been allowed for the real party in interest to . . . be substituted into the action." K.S.A. 2012 Supp. 60-217(a)(3). The panel pointed out that in *Esposito v. United States*, 368 F.3d 1271, 1276-77 (10th Cir. 2004), the Tenth Circuit recognized that the party opposing substitution of the real party in interest could argue it had been prejudiced by the delay.

Herring points out that in *Don Conroy Contractor, Inc. v. Jensen*, 192 Kan. 300, 302, 387 P.2d 187 (1963), we applied a totality of the circumstances approach in determining a "reasonable time" under Kansas' mechanic's lien statute in place at the time. There, the statute did not fix a time in which notice must be served; therefore we found the statute allowed for a "reasonable time." 192 Kan. at 302. Although we recognized that mechanic's liens are created by statute and could only arise under the circumstances prescribed by the statute, we found that "[w]hat constitutes a reasonable time is a matter to be determined by the trier of facts under the circumstances in each particular case." 192 Kan. at 302, 304. Similarly, here, even though the substitution statute demands strict compliance, because the statute specifically provides for a "reasonable time," the "reasonable time" should depend upon the totality of the circumstances.

A review of other jurisdictions' statutes on substitution at death reveals that a majority of states, like the federal rule, have a fixed time period for substitution and are unhelpful in our analysis. Four states, in addition to Kansas, have a "reasonable time" requirement in their substitution at death provisions: Idaho, New York, South Carolina, and Texas. See Idaho R. Civ. Proc. 25; N.Y. C.P.L.R. § 1021 (McKinney 2012); S.C. R. Civ. Proc. 25; Texas R. Civ. Proc. 151 (discussing death of plaintiff). As noted above, the Court of Appeals was persuaded by New York's totality of the circumstances with specific factors approach.

But we are not so enamored with the idea of singling out any specific factors, preferring to direct the district court to conduct the familiar totality of circumstances review, whereby all of the relevant facts present in the particular case are analyzed. Certainly, in most cases, the diligence of the substituting party or the explanation for any dilatory conduct will be part of the total circumstances. Likewise, we agree with the panel that prejudice can be a consideration in the determination of whether the motion for substitution has been filed within the requisite "reasonable time." Nevertheless, once the court has determined that the substitution motion was not made within a reasonable time, a separate finding of prejudice is not a condition precedent to dismissal. In other

words, an absence of prejudice will not save an action from dismissal if the court deems the unexplained delay in filing the motion for substitution to have been unreasonable.

Further, we disagree with the panel's suggestion that the reasonable time analysis requires an assessment of the relative merits of the substituting party's claims or defenses. Of course, an unexplained delay on an obviously frivolous claim or defense can give rise to an inference that the substituting party is attempting to unfairly gain some advantage from extending the litigation, i.e., is being unreasonable. But we reject the notion that an unreasonably timed substitution motion can be redeemed based upon the relative merits of the substituting party's claims or defenses. Those parties possessing winning claims should be subject to the same procedural rules and constraints as those parties whose claims may be viewed as being weaker.

In conclusion, we hold that the relevant time period for determining the reasonableness of a delay in substituting a party begins with the statement noting the death and ends with the filing of the motion for substitution. Further, the standard for determining whether a substitution motion has been made within a reasonable time is to consider the totality of the circumstances, which can include the fact of whether another party will be prejudiced by the substitution. Here, the district court applied the incorrect legal standards, both in the time period analyzed and in identifying the facts that could be considered in the analysis. Therefore, the district court abused its discretion, and we cannot be confident that such errors did not affect the decision to void the prior substitution order and dismiss the case. Accordingly, we affirm the Court of Appeals' reversal of the district court's judgment, but remand with directions for the district court to consider the totality of the circumstances to determine whether the motion for substitution was filed within a reasonable time of the suggestion of death on the record.