NOT DESIGNATED FOR PUBLICATION

No. 113,040

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BARBARA KELLY and SEAN FALLIS,
*Appellants,*

v.

PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed April 15, 2016. Reversed and remanded with directions.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, of for appellants.

*Marc A. Powell*, of Powell Law Office, of Wichita, for appellee.

Before MALONE, C.J., SCHROEDER, J., and BURGESS, S.J.

*Per Curiam*:  Barbara Kelly and Sean Fallis appeal the district court's granting of Progressive Northwestern Insurance Company's (Progressive) motion for summary judgment. For the reasons stated herein, we find the district court erred in granting Progressive's motion for summary judgment as there are unresolved material facts when considered in the light most favorable to Kelly and Fallis. Additionally, we find the district court erred in denying Kelly and Fallis' motion to amend the petition and, upon remand, the district court should reconsider the motion pursuant to K.S.A. 2015 Supp. 60-215(a)(2). Reversed and remanded with directions.

1

FACTS

On November 1, 2013, Sean Fallis was severely injured in a motorcycle accident caused by another driver. Shortly after the accident, Fallis applied for personal injury protection (PIP) benefits with Progressive under a policy held by his wife, Barbara Kelly. Fallis' PIP application was processed and approved by Progressive around December 4, 2013. On December 13, 2013, Fallis' counsel contacted Progressive regarding his settlement talks with the tortfeasor's insurance carrier. Prior to settlement, Fallis' counsel wanted to verify Progressive would grant a PIP subrogation waiver and that a settlement would not affect the continued payment of PIP benefits to Fallis by Progressive. Fallis received an email back from Progressive adjuster Josh Daniels, stating: "I have attached a letter, agreeing to waive our PIP lien and subrogating rights." The attached letter stated:

"We have received and reviewed your request that we waive our PIP lien for Sean Fallis on this claim. As it does not appear Mr. Fallis will be fully compensated for his injuries, we will be waiving our subrogation rights for the benefits paid. Please accept this letter as formal withdrawal of our subrogation lien."

Upon receiving the letter purporting to waive Progressive's PIP lien and subrogation rights, Fallis settled with the tortfeasor for the full policy limit of $100,000 in December 2013. After the settlement, Progressive continued to pay the PIP benefits (medical expenses and lost wages) until August 2014. In January 2014, Fallis requested substitution benefits for care provided to Fallis by Kelly as benefits under the PIP provisions of the insurance policy. The request was denied by Progressive on January 29, 2014, because Progressive did not believe Kelly or Fallis had incurred an actual expense to support the claim for substitution benefits.

On March 10, 2014, Kelly and Fallis filed suit to recover the denied substitution benefits under the PIP provision of the insurance policy. They later attempted to amend the petition to include a claim for rehabilitation benefits under the PIP provisions of the

2

insurance policy. The district court denied Kelly and Fallis' motion to amend the petition finding the request was futile.

During discovery, a dispute arose over whether Fallis was "insured," as defined by Progressive's insurance policy. Progressive filed a motion for summary judgment as to the substitution claims set forth in the original petition arguing: (1) Fallis was not an insured person as defined by the policy and was thus excluded from receiving PIP benefits, and (2) even if Fallis was entitled to PIP benefits, the settlement with the tortfeasor's insurance carrier extinguished Progressive's right to subrogation for past or future PIP benefits and extinguished Fallis' right to collect PIP benefits from Progressive.

In its decision granting Progressive's motion for summary judgment, the district court made the following findings it deemed uncontroverted facts:

"FINDINGS OF UNCONTROVERTED FACTS

"1. [Progressive] issued a policy, (Policy Number 13209639) that provided coverage for the policy period of May 27, 2013 through November 27, 2013.

"2. [Kelly] is identified on the policy declarations page as the named insured.

"3. [Fallis] is identified on the policy declarations page as being a household resident of [Kelly].

"4. [Fallis] and [Kelly] are married.

"5. On October 29, 2013 [Fallis] and Kelly purchased a 2005 Yamaha Motorcycle.

"6. In January 2014, the motorcycle was titled in [Fallis'] name.

"7. Neither Fallis or Kelly purchased insurance for the motorcycle.

"8. On November 1, 2013, [Fallis], while operating the motorcycle, was involved in an accident with an automobile. [Fallis] sustained personal injuries as a result of the accident.

"9. [Fallis] was cited for not having a motorcycle license and knowingly driving an uninsured motor vehicle.

"10. Following the accident, [Fallis] received Personal Injury Protection ('PIP') benefits pursuant to K.S.A. 40-3103(k) [medical] and (l) [wage]. The benefits were

received because [Progressive] did not know that [Fallis] was the owner of the motorcycle.

"11. Shortly after the accident, the insurance carrier for the operator of the automobile who caused the accident offered its policy to settle any and all claims.

"12. Progressive was made aware of the settlement offer and, with respect to medical and wage benefits, agreed not to assert/waive the PIP lien it was authorized to assert under the applicable statute and policy language for benefits paid.

"13. Following the settlement with the tortfeasor, [Fallis] submitted a claim to Progressive for PIP benefits defined by statute as 'substitution benefits' and sometimes referred to as 'essential services.' K.S.A. 40-3103(w).

"14. Progressive denied [Fallis'] request for PIP benefits, and [Fallis] filed the above-captioned lawsuit."

In granting Progressive's motion for summary judgment, the district court found: (1) Fallis was not an insured person under the policy; and (2) *Chamberlain v. Farm Bureau Mut. Ins. Co.*, 36 Kan. App. 2d 163, 174, 137 P.3d 1081, *rev. denied* 282 Kan. 788 (2006), controlled since Fallis had settled his claim against the tortfeasor which terminated his right to PIP benefits.

Kelly and Fallis appealed. Progressive also filed a cross-appeal, which was later withdrawn.

ANALYSIS

*Summary Judgement Was Premature*

Kelly and Fallis argue the district court erred in granting Progressive's motion for summary judgment because: (1) Whether Fallis was insured under the insurance policy was a disputed material fact, and (2) the district court erred in finding Fallis was precluded from receiving PIP benefits as a matter of law under *Chamberlain*.

4

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

*Are there disputed material facts?*

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *Dana v. Heartland Management Co.*, 48 Kan. App. 2d 1048, 1056, 301 P.3d 772 (2013). However, a party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358, *rev. denied* 297 Kan. 1246 (2013).

The district court found summary judgment was appropriate because Fallis was precluded from seeking PIP benefits under the policy issued by Progressive; Fallis was the owner of the motorcycle when he was injured; and there was no insurance on the motorcycle, thus meeting the policy's requirements for exclusion of coverage.

5

Both parties agree Fallis was injured while riding an uninsured motorcycle. The disagreement lies in who was the owner of the motorcycle at the time of the accident. Progressive argues there is no genuine dispute Fallis purchased the motorcycle prior to the accident and, therefore, he is excluded from coverage under the policy. Fallis argues he was not the owner of the motorcycle at the time of the accident and thus is entitled to PIP coverage. Furthermore, Fallis argues the policy failed to define "owner," and as such, the term is ambiguous and any ambiguity should be construed in his favor.

K.S.A. 40-3103(o) of the Kansas Automobile Injury Reparations Act, defines owner as:

> "[A] person, other than a lienholder, having property in or title to a motor vehicle, including a person who is entitled to the use and possession of a motor vehicle subject to a security interest held by another person, but such term does not include a lessee under a lease not intended as security."

On the date of the accident, Fallis argues the motorcycle was not titled in his name. The extent, if any, of Fallis' property interest in the motorcycle on November 1, 2013, is unclear. Fallis argues the police report reflected the seller of the motorcycle, Martin Thorner, was the owner of the motorcycle on the date of the accident. The record is silent as to when Fallis paid Thorner for the motorcycle since discovery had not been completed. Progressive argues the title was filed in January 2014 with the State of Kansas and reflects the purchase date as October 29, 2013—3 days before the accident on November 1, 2013. Fallis asserted he did not know how the date on the title was inserted and disputed that the date on the title is accurate. Progressive also asserted Thorner claimed he sold the motorcycle to Fallis for $2,700 on or around September or October 2013. Additionally, Thorner's affidavit reflects Fallis returned 1 to 2 months after the sale to have paperwork signed again regarding the sale of the motorcycle. At the time of the second visit, Thorner observed Fallis "did not appear to have any obvious physical injuries."

6

The record is unclear as to what paperwork was signed or when the second visit actually occurred. The record does reflect Fallis was charged with riding an uninsured motorcycle and that he told the police officer he had just purchased the motorcycle.

Given these facts, Kelly and Fallis argue the ownership of the motorcycle at the time of the accident is a material fact in dispute and the record simply shows Fallis may have agreed to buy the motorcycle on October 29, 2013. That does not mean he became the owner of the motorcycle on that date. There has been no evidence produced as to when Thorner was paid the $2,700.

Fallis was required to come forward with evidence to establish a genuine dispute as to the ownership of the motorcycle. Here, Fallis was able to show that no one knows who put the October 29th date on the motorcycle's title paperwork. No evidence has been produced to show who filed the title—Fallis or one of the insurance companies. No evidence has been produced to reflect when Fallis paid for the motorcycle. The police report has contradictory information within it since it reflects Thorner is the owner of the motorcycle and that Fallis recently purchased it. With all of the unanswered questions, multiple material facts exist when considered in the light most favorable to Fallis. The district court erred in granting Progressive's motion for summary judgment. Given this ruling, we decline to address Kelly and Fallis' argument that the term "owner" is ambiguous as referenced in the policy and as applied by the district court.

*Fallis' Settlement with Progressive's Approval*

Even if Fallis was not the owner of the motorcycle on the date of the accident, the district court still found that summary judgment was appropriate as a matter of law as to the substitution PIP benefits:

> "Summary judgment is also appropriate because of the application of the
> *Chamberl*[*a*]*in* case. When a plaintiff settles his or her claims against the tortfeasor and

releases the insurance company's statutory and contractual right to subrogation, the plaintiffs right to collect personal injury protection (PIP) benefits is extinguished. *Chamberlain v. Farm Bureau*, 36 Kan. App. 2d 163, 174, 137 P.3d 1081 (2006), *rev. denied* 282 Kan. 788 (2006). While in this case Progressive agreed to waive its rights with respect to benefits paid (medical and wage), it did not and cannot be said to 'waived' its rights to claims for other benefits. [i.e. essential services and rehabilitation.] A waiver is the intentional relinquishment of a known right. *Lyons ex. rel. Lawing v. Holder*, 38 Kan. App. 2d 131, 138, 163 P.3d 343 (2007) (citing *Sultan v. Bungard*, 35 Kan. App. 2d 495, 498, 131 P.3d 1264 [2006]). Further, pursuant to *Chamberlain*[,] funds received from Plaintiffs' settlement with the tortfeasor are to be a credit against any future payment. *ld* at Syl. 9 and 173 citing K.S.A. 40-3113(b)."

In *Chamberlain*, a panel of this court found:

"When an injured party settles his or her claim and releases the tortfeasor from all further liability arising out of the accident in which his or her damages were sustained, the only recourse for the PIP carrier, who stands in the shoes of its insured, is recovery from the injured party's settlement proceeds, not from the tortfeasor who has now been released.

"This is what happened when Chamberlain settled with [the tortfeasor] and released him from further liability. The funds from Chamberlain's settlement with [the tortfeasor] constituted a credit against any claim for future PIP benefits to the extent that they exceeded the amount of PIP benefits paid to the date of the settlement. See K.S.A. 40-3113a(b). The settlement also extinguished Farm Bureau's obligation to pay any further PIP claims from Chamberlain or her health care providers, including claims previously submitted but unpaid, since the settlement bars Farm Bureau from asserting a subrogation claim for any additional PIP payments against . . . the now-released tortfeasor.

"In the present suit, Chamberlain seeks to recover unpaid PIP benefits from Farm Bureau following her settlement with [the tortfeasor]. If permitted to do so, she would receive a double recovery: first, the settlement proceeds from [the tortfeasor] for losses for which she asserted PIP claims, and again from Farm Bureau in this action for those same losses. When she settled with [the tortfeasor], Chamberlain lost her right to pursue her PIP claims against Farm Bureau." *Chamberlain*, 36 Kan. App. 2d at 173-74.

8

At the hearing on Progressive's motion for summary judgment, when asked by the district court why *Chamberlain* should not apply, Kelly and Fallis conceded it would apply excluding Progressive's prior approval of the settlement. Progressive recognized that even by withdrawing its lien, the settlement would not fully compensate Fallis for his injuries. Again, the letter from Progressive provides:

> "We have received and reviewed your request that we waive our PIP lien for Sean Fallis on this claim. As it does not appear Mr. Fallis will be fully compensated for his injuries, we will be waiving our subrogation rights for the benefits paid. Please accept this letter as formal withdrawal of our subrogation lien."

At the August 7, 2014, hearing on Kelly and Fallis' motion to amend, the district court found that based on the plain language of the letter sent by Daniels, Progressive only waived its subrogation rights to the benefits already paid. The district court reaffirmed this finding at the hearing on October 16, 2014, and in its order granting Progressive's motion for summary judgment. The district court held that based on the plain language of Daniels' letter, while Progressive had agreed to pay Fallis' medical expenses and wage benefits, it did not agree to pay any additional PIP benefits. The district court concluded substitution benefits were not available and granted summary judgment to Progressive.

Kelly and Fallis argue the meaning of the letter is a disputed material fact, and because the author of the letter, Daniels, had not been deposed, the district court erred in granting summary judgment. In contrast, Progressive argues it does not matter exactly what Progressive agreed to pay because *Chamberlain* would control regardless of what Progressive might or might not have agreed to pay.

There is support for Kelly and Fallis' contention that it is unclear which PIP benefits Progressive was agreeing to pay postsettlement. Kelly and Fallis point to

9

Progressive's subsequent conduct to support their argument this was a material disputed fact that should have precluded summary judgment:

> "Progressive's subsequent conduct also makes it clear that Progressive was willing to pay PIP benefits post-settlement if it felt that payment was justified. With regard to the claim for 'substitution benefits,' for example, Progressive clearly stated the reason it denied the claim. The reason was not something along the lines of 'We only agreed to pay medical expenses and lost wages and not anything else.' Instead, the reason for the denial was submitted by the Appellants in two proposed uncontroverted facts:  On January 29, 2014, the Defendant denied the Plaintiffs claim for substitution benefits because 'they don't feel there is an economic loss being incurred.'
>
> "The January 29, 2014[,] denial followed the Defendant's prior explanation that 'substitution benefits would not be paid because:  As it is Mr. Fallis' wife performing the household duties, we would not be able to afford this benefit. Per our policy definition, it states Substitution expenses means appropriate and reasonable expenses incurred by an insured person for ordinary and necessary services in lieu of those that, but for the bodily injury, the insured person would have performed. This benefit is used when someone is hired to perform duties that the injured party would normally do themselves. Since there is no exchange of money, we would not be able to consider this an expense.'
>
> "Again, the correspondence from Progressive makes it clear that it considered paying the benefit requested. Had Progressive only agreed to pay lost wages and medical expenses, it could be expected to simply say so or at least hint that was the reason. It did not. From that, it can be inferred that there was no agreement to limit the types of PIP benefits available to the Appellants post-settlement."

In light of Progressive's summary judgment motion, all facts and inferences are to be interpreted in favor of Kelly and Fallis. Progressive's conduct after the settlement reflects Progressive voluntarily paid additional PIP benefits in the form of medical and wage benefits above the amount paid at the time the letter was sent.

As a general rule, summary judgment in a pending case should not be granted until discovery is complete. However, if the facts pertinent to the material issues are not disputed, summary judgment may be appropriate even when discovery is unfinished.

10

*Northern Natural Gas Co.*, 296 Kan. at 935. A party who requires additional discovery to defend against a motion for summary judgment must seek a continuance to conduct that discovery. *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 966, 186 P.3d 829, *rev. denied* 286 Kan. 1176 (2008); see K.S.A. 2014 Supp. 60-256(f). While Kelly and Fallis' counsel did not formally ask for a continuance to depose Daniels, at the hearing on Progressive's motion for summary judgment, he did state on the record:

> "Mr. McMaster to date hasn't agreed to depose [Daniels], or provide a date for him, and [Daniels] doesn't work for his company any more. So I think there is an opportunity here for us to go talk to this guy, clarify the issues, which I think goes to the heart of the case, and get his deposition in the can. Until discovery is done—which no discovery has taken place, it's just been put out for motion. Until discovery is done, summary judgment isn't appropriate unless it's absolutely clear as a matter of law, where there are no disputed facts that warrant it. Here there are facts that are disputed."

There is not enough information in the record to interpret what exactly Progressive was agreeing to waive when it approved Fallis' settlement with the tortfeasor, especially when one considers the last line of the letter:  "Please accept this letter as a formal withdraw of our subrogation lien."

> "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011) (citing, *e.g., Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 [2007]). If, on the other hand, the court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it. See *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992); *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 838-40, 508 P.2d 889 (1973)." *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

Material facts exist as to what Progressive meant in the letter from Daniels when it waived its PIP lien, and discovery may answer that question. *Chamberlain* is clearly distinguishable. In *Chamberlain*, the reason Chamberlain's settlement extinguished her rights to additional PIP benefits from Farm Bureau was because her settlement released the tortfeasor from all future liability and thus barred Farm Bureau from asserting a subrogation claim for any additional PIP payments against the tortfeasor. The major distinction between this case and *Chamberlain* is that Chamberlain settled without Farm Bureau's permission. Here, Fallis settled with the tortfeasor with Progressive's blessing and their knowledge that Fallis' injuries exceeded the value of the tortfeasor's insurance policy limits. It matters not whether or how the tortfeasor was released; Progressive agreed to the settlement and withdrew its subrogation lien.

The district court improperly relied on *Chamberlain* to grant Progressive's motion for summary judgment on Kelly and Fallis' claim for PIP substitution benefits.

*Motion to Amend Kelly and Fallis' Petition*

Kelly and Fallis argue the district court erred when it denied their motion to amend the petition to include a claim for rehabilitation PIP benefits. They argue the claim could not have been presented in the initial petition and therefore they should have been permitted to amend their petition to pursue the claim.

As discussed above, in denying Kelly and Fallis' motion to amend, the district court found the plain language of the letter sent by Daniels stated Progressive only agreed to withdraw its subrogation rights as to the PIP benefits already paid and did not agree to pay additional PIP benefits. The district court also concluded *Chamberlain* controlled and Kelly and Fallis' right to additional PIP benefits from Progressive was extinguished. Based on those two findings, the district court concluded the requested amendment to the petition was futile.

12

Motions to amend a petition are governed under K.S.A. 2015 Supp. 60-215. Kelly and Fallis filed the initial petition on March 10, 2014. Progressive served its answer on April 29, 2014. The motion to amend the petition was filed May 22, 2014. A party may amend its pleadings once as a matter of course within 21 days of service or, if the pleading is one to which a responsive pleading is required, within 21 days after service of the response pleading. K.S.A. 2015 Supp. 60-215(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave. The court should freely give leave when justice so requires." K.S.A. 2015 Supp. 60-215(a)(2).

> "As a general rule, amendments to pleadings are favored in law and should be allowed liberally in the furtherance of justice to the end that every case may be presented on its real facts and determined on its merits. [Citation omitted.] This principle has been followed in Kansas under both the old and the new codes of civil procedure.
>
> . . . .
>
> "Motions for leave to amend are addressed to the sound discretion of the court, but its discretion is not to be exercised arbitrarily or used to defeat the ends of justice. [Citation omitted.]" *Walker v. Fleming Motor Co.,* 195 Kan. 328, 330, 404 P.2d 929 (1965).

A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co.*, 296 Kan. at 935. An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of, or fails to consider, proper statutory limitations or legal standards. *Graham v. Herring,* 297 Kan. 847, 855, 305 P.3d 585 (2013). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co.,* 296 Kan. at 935.

Kelly and Fallis argue the district court abused its discretion when it found Progressive had only withdrawn its subrogation rights to PIP benefits already paid.

13

"[T]here was a dispute regarding exactly what Progressive waived. However, that dispute should have been further explored by allowing the claim to proceed so discovery could unearth the facts surrounding it. Instead, the district court denied the motion to allow that to occur.

"By denying the Appellant's Motion to Amend, the lower court cut off [Fallis'] right to seek rehabilitation benefits. His inability to pursue that claim is a loss of a substantial right and the lower court erred in denying the Motion to Amend Petition and that decision should be reversed and remanded for further proceedings."

Since we have found the district court erred in granting Progressive's motion for summary judgment, and the law favors a party's right to amend his or her petition, the district court improperly relied upon *Chamberlain*, an error of law, in denying Kelly and Fallis' motion to amend their petition.

Reversed and remanded with directions.